BIVINS *v.* THE STATE.

No. 15421.   APRIL 4, 1946.   REHEARING DENIED MAY 10, 1946.

*Grady Gillen* and *Thomas A. Jacobs Jr.*, for plaintiff in error.

*Eugene Cook, Attorney-General, Charles H. Garrett, Solicitor-General,* and *C. E. Gregory Jr., Assistant Attorney-General,* contra.

HEAD, Justice. (After stating the foregoing facts.) ■ In the first special ground, the defendant assigns error on the following charge of the court: "I charge you further that a bare fear on the part of the defendant of any one of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the

circumstances were sufficient to excite the fears of a *reasonable man* and that the party killing really acted under the influence of those fears, and not in a spirit of revenge."

The assignment of error is on the grounds, that the court should not have required the defendant's fears to be measured by the fears of a hypothetical "reasonable man," and because the court intimated that a criminal homicide had been committed and reasonable fears had not been aroused in the mind of the defendant.

This charge is in almost the identical language of the Code, § 26-1012, and would not be subject to either criticism offered. The fears of the slayer that will justify a homicide must be the fears of a reasonable man, and if the defendant is an unusually timid man, or lacking in courage, and committed the homicide under circumstances that would not generate fears in a hypothetical reasonable man, he would not be justified. This court has over a period of years decided various phases of this question. See *Teal* v. *State,* 22 *Ga.* 76 (68 Am. D. 482); *Golden* v. *State,* 25 *Ga.* 527; *Frazier* v. *State,* 112 *Ga.* 869 (38 S. E. 349); *Vincent* v. *State,* 153 *Ga.* 299 (112 S. E. 120). In *Anderson* v. *State,* 117 *Ga.* 258 (43 S. E. 835), the court said: "The law, in cases of homicide, does not take into account the actual fears of the slayer, but considers all the circumstances, with reference to a determination as to whether they were sufficient to excite the fears of a reasonable person."

■ In the second special ground, the defendant assigns error on the following charge: "Now there is another basis upon which justifiable homicide may rest, and that is a case of self-defense where there existed a condition of mutual combat, as I have defined that to you, between the parties. If you find from the evidence that such a condition did exist, then, I charge you, if a person shall kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear, also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline further struggle before the mortal blow was given."

Among other grounds of objection, the defendant contends that this charge was error because under no theory of the evidence was mutual combat involved. A careful study of the evidence convinces us that this principle of law, found in the Code, § 26-1014,

which is applicable only to self-defense in cases of mutual combat, is inapplicable to the present case. Under the State's evidence, if the defendant was guilty of any offense, he was guilty of murder. The defendant insisted that the homicide was in self-defense. There was no evidence from which an inference could be drawn that mutual combat was involved. The charge of the section above quoted may have confused the jury and led them to believe that, in order to acquit the defendant on his contention that he acted in self-defense and under the fears of a reasonable man, "it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary." This put a greater burden on the defendant than the law required. *Jones* v. *State,* 172 *Ga.* 506 (158 S. E. 44).

In *Lamp* v. *State,* 164 *Ga.* 59 (137 S. E. 765), the court charged the law of mutual combat and § 26-1014 of the Code in connection therewith in language almost identical with that under consideration, and in that case the court said: "It is the settled law in this State that to charge section 73 of the Penal Code [now section 26-1014], which applies only to cases where the evidence tends to show a mutual intention to fight, when there is no evidence of a mutual combat, is error, and requires a reversal. There was no evidence in the present case tending to show a mutual intention to fight on the part of the deceased and the defendant; and consequently it was error, requiring the grant of a new trial, for the court to charge the jury section 73 of the Penal Code. *Lowman* v. *State,* 109 *Ga.* 501 (3) (34 S. E. 1019) ; *Jordan* v. *State,* 117 *Ga.* 405 (2) (43 S. E. 747), and cit.; *James* v. *State,* 123 *Ga.* 548 (2) (51 S. E. 577) ; *McCray* v. *State,* 134 *Ga.* 416 (13), 418 (68 S. E. 62, 20 Ann. Cas. 101) ; *Crawford* v. *State,* 149 *Ga.* 485 (100 S. E. 633) ; *Brown* v. *State,* 151 *Ga.* 497, 501 (107 S. E. 536) ; *Campbell* v. *State,* 157 *Ga.* 233 (121 S. E. 306)."

It was error requiring a reversal, under the evidence in the present case, to charge section 26-1014 of the Code. *Powell* v. *State,* 101 *Ga.* 11 (6, 7) (29 S. E. 309, 65 Am. St. R. 277) ; *Teasley* v. *State,* 104 *Ga.* 738 (30 S. E. 938) ; *Parks* v. *State,* 105 *Ga.* 242 (3) (31 S. E. 580) ; *Smith* v. *State,* 106 *Ga.* 673 (3) (32 S. E. 851, 71 Am. St. R. 286) ; *Delegal* v. *State,* 109 *Ga.* 518 (3) (35 S. E. 105) ; *Stubbs* v. *State,* 110 *Ga.* 916 (36 S. E. 200) ; *Ragland*

v. *State,* 111 *Ga.* 211 (3) (36 S. E. 682); *Wheeler* v. *State,* 112 *Ga.* 44 (37 S. E. 126); *Freeman* v. *State,* 112 *Ga.* 48 (3) (37 S. E. 172); *Mell* v. *State,* 112 *Ga.* 78 (37 S. E. 121); *Morgan* v. *State,* 152 *Ga.* 537 (3) (110 S. E. 286).

■ The defendant assigns error, in the third special ground on the following charge: "I charge you further, if after persuasion, remonstrance, or other gentle measures used, a forcible attack and invasion on the property or habitation of another cannot be prevented, it shall be justifiable homicide to kill the person so forcibly attacking and invading the property or habitation of another; but it must appear that such killing was absolutely necessary to prevent such attack or invasion, and that a serious injury was intended, or might accrue to the person, property, or family of the person killing."

The defendant contends that this charge was error because: (a) the rule of absolute necessity to kill applies only in those cases where the circumstances are such that there is not only time and opportunity for persuasion, remonstrance, or other gentle measures, but a duty to use such measures before resorting to slaying the assailant; (b) the charge was inapplicable and prejudicial to the defendant because he contended that he acted in self-defense and under the fears of a reasonable man; (c) the defendant had the right to defend his home or habitation against a forcible attack, if he acted under the fears of a reasonably courageous man that it was necessary to take life to prevent the invasion of his property or habitation.

In the present case, there was absolutely no evidence to require the charge of the court on defense of habitation, and the charge was totally inapplicable, but it will be noted that no objection was made on the ground that the charge is not supported by evidence. The instruction is a correct statement of the principle of law charged, being in the language of the Code, § 26-1013, and it was not erroneous for any reason assigned.

■ The fourth special ground complains of the following charge: "If there are conflicts in the testimony, it is your duty to reconcile those conflicts if you can, so as not to impute perjury to any witness sworn, but if there are conflicts which you cannot reconcile, then you should believe that witness, or those witnesses, whom you think most entitled to credit."

The errors assigned are: (1) that this charge was prejudicial because, in reconciling conflicts, the jury must take into consideration the equal credibility of witnesses, and the court should have instructed them that they should believe that witness or those witnesses having the best opportunity to know the facts, provided the witnesses were of equal credibility; and (2) because the court failed to instruct the jury that the defendant's statement might be considered in connection with the conflicts in the evidence, and that the jury might believe the statement in preference to the testimony of any witness, and might consider his statement in an effort to reconcile conflicts and ascertain the truth of the case. It is this latter objection that the defendant insists upon in his brief filed in this court.

Language very similar to that charged by the trial court was approved by this court in *Stiles* v. *State,* 57 *Ga.* 184 (5), where it was held that it was not error to charge the jury "that they should reconcile all the testimony if possible, and if not, to believe those whom they thought most entitled to credit." The credibility of witnesses is a matter peculiarly within the province of the jury, and they are not required to believe those witnesses who have the best opportunity to know the facts.

In regard to the objection that the court should have instructed the jury that the defendant's statement might be considered in connection with the conflicts in the evidence, we find that, immediately after the charge under consideration here, the court correctly instructed the jury on the weight to be given the defendant's statement. The court did not directly connect the two portions of the charge, but we do not think that the jury could have failed to understand that they could consider the defendant's statement in connection with any phase of the case, and believe it in preference to the sworn testimony if they so desired. In the latter part of the charge, the court again referred to the statement of the defendant in the following language: "If, under all or any of the law I have given you in charge, from a consideration of the evidence, the evidence and the defendant's statement, or from the defendant's statement alone, you believe he is not guilty, or there rests upon your minds a reasonable doubt of his guilt, it would be your duty to acquit him."

It has been repeatedly held that it is not error to fail to instruct

the jury that they can consider the defendant's statement in connection with the evidence, when the court has elsewhere charged substantially in the terms of the statute as to the defendant's statement. *Miller* v. *State,* 94 *Ga.* 1 (2) (21 S. E. 128); *Cargile* v. *State,* 137 *Ga.* 775 (74 S. E. 621); *McCrary* v. *State,* 141 *Ga.* 4 (2) (80 S. E. 305); *Godbee* v. *State,* 141 *Ga.* 520 (81 S. E. 876); *Morris* v. *State,* 177 *Ga.* 366 (3) (170 S. E. 217). It is not error for a judge to shape his general charge with reference to the evidence, where he properly instructs the jury in some portion of the charge in regard to the defendant's statement. *Roberts* v. *State,* 123 *Ga.* 146 (7) (51 S. E. 374); *Rouse* v. *State,* 136 *Ga.* 356 (5) (71 S. E. 667); *Fry* v. *State,* 141 *Ga.* 789 (3) (82 S. E. 135); *Hoxie* v. *State,* 114 *Ga.* 19 (7) (39 S. E. 944); *Tolbirt* v. *State,* 124 *Ga.* 767 (2) (53 S. E. 327); *Booker* v. *State,* 183 *Ga.* 822 (5) (190 S. E. 356).

■ In the fifth special ground the defendant quotes a long extract from the charge, but the paragraph at which his criticism is apparently aimed is the last paragraph of the extract, as follows: "I charge you further that the law presumes every intentional homicide to be malicious until the contrary appears from circumstances of alleviation, of justification, of mitigation or excuse; and the burden is on the slayer, whenever an intentional homicide has been proved, to make out such circumstances to the satisfaction of the jury, unless they appear from the evidence produced against him."

The grounds of objection are: (a) because every intentional killing with malice is not murder, and, if the defendant was fully justified, although he entertained malice, the offense is nevertheless justifiable; (b) because every intentional homicide is not presumed to be malicious, and the burden is not upon the slayer in every case of intentional killing to make out circumstances of alleviation, justification, mitigation, or excuse to the jury; (c) the defendant is clothed with the presumption of innocence throughout the trial, and the burden is upon the State to negative mitigation, alleviation, or excuse, and the burden is not upon the accused to introduce evidence to show excuse, mitigation, alleviation, or justification, as the charge implies.

The contention of the defendant that every intentional killing with malice is not murder has no application to this charge, which

gives the rule as to the *presumption* of malice from an intentional killing. The leading case on the rule of the presumption of malice when a homicide has been proved is *Mann* v. *State*, 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934), in which the court held: "In the trial of one indicted for murder, where the evidence adduced to establish the homicide presents two conflicting theories of fact, one based upon circumstances indicating malice, and the other upon warranted inferences which negative its existence, then it becomes a question of fact, to be decided by the jury, as to which one of these inconsistent theories is in accord with the real truth of the occurrence. In such a case it is proper to charge the jury that the law presumes every homicide to be malicious, until the contrary appears from circumstances of alleviation, of excuse, or justification, and that it is incumbent on the prisoner to make out such circumstances to the satisfaction of the jury, unless they appear from the evidence produced against him." It will be noted that the language complained of by the defendant is almost identical with that approved in the *Mann* case, supra, which has been cited with approval in many subsequent decisions of this court. See *Bradley* v. *State*, 128 *Ga.* 21 (5) (57 S. E. 237); *Godfrey* v. *State*, 135 *Ga.* 571 (69 S. E. 1080); *Turner* v. *State*, 139 *Ga.* 593 (3) (77 S. E. 828); *O'Pry* v. *State*, 142 *Ga.* 600 (83 S. E. 228); *Fitzpatrick* v. *State*, 149 *Ga.* 75 (3) (99 S. E. 128); *Gaillard* v. *State*, 149 *Ga.* 190 (99 S. E. 629); *Greer* v. *State*, 159 *Ga.* 85 (3) (125 S. E. 52); *Cady* v. *State*, 198 *Ga.* 111 (31 S. E. 2d, 38).

■ Special ground six assigns error on the following charge: "If, however, the proof, if there be any, that shows the homicide itself discloses that the homicide was done without malice, this presumption that the homicide is malicious does not exist; but if the accompanying proof, if there be any, does not disclose that the killing was done without malice, then, it is incumbent upon the slayer to show that it was done without malice. I charge you, however, that this presumption which arises against the slayer where an intentional homicide is shown, does not arise against a defendant unless it be first shown to a moral and reasonable certainty and beyond a reasonable doubt that the defendant is the intentional slayer. Unless it appears beyond a reasonable doubt and to a moral and reasonable certainty that *this defendant* is the intentional slayer, *this presumption* does not arise in this case and has

no application to the case and you will not consider such rule in passing upon the case."

The objections are: (a) it is error to charge that every killing with malice is murder; (b) because the court expressed an opinion that, if the defendant was the intentional killer in this case, the presumption of malice and murder would arise, thereby expressing an opinion that the defendant was guilty of murder, and his statement and the evidence failed to show excuse, justification, mitigation, or alleviation; (c) the defendant says that every intentional killing is not presumed to have been committed with malice, but may be voluntary manslaughter, or justifiable, and an intentional homicide may be justifiable, although the slayer may have entertained malice at the time the fatal blow was struck.

The first objection to this instruction is without merit, since the court did not charge that every killing with malice is murder, but charged on a presumption of malice, which might be rebutted by the defendant. The objection that this instruction expressed an opinion that the defendant was guilty of murder is also without merit. The court elsewhere fully charged concerning the instances where the killing might be reduced to voluntary manslaughter or found to be justifiable homicide, and the last objection has no merit.

■ In the seventh special ground, the defendant assigns error on the following charge: "When the killing is proved to be the act of the defendant, the presumption of innocence with which he enters upon the trial is removed from him, and the burden is upon him to justify or mitigate the homicide. But as I have charged you heretofore, the evidence in justification or mitigation may be found in the testimony introduced against him. If there be no evidence introduced to show justification or mitigation, and if the evidence introduced shows the homicide committed as charged in the indictment, the burden would then be upon the prisoner to show mitigation or excuse."

The objections are: (a) the burden of proof and of introducing testimony may shift, but the presumption of innocence remains with the defendant throughout the trial, and it is error to instruct the jury that the presumption of innocence is removed when the State proves a homicide as charged in the indictment; (b) the charge put the burden on the defendant of introducing evidence

to show justification or mitigation, whereas under the law the defendant may show justification or mitigation through his statement alone, which is technically not evidence; (c) before there is any burden of proof resting on the defendant, the State must show an unlawful killing, and it is error to instruct the jury that the presumption of innocence is removed when the State proves a killing to be the act of the defendant.

In *Mann* v. *State,* supra, the court had under consideration a charge, the first part of which is almost identical with that here complained of, and it was held that it was proper to instruct the jury as was done in that case. The last sentence of the charge here quoted was a mere amplification of the previous language. In the *Mann* case, the objection was raised that the defendant's statement and some of the circumstances appearing in evidence tended to show that the homicide was accidental, and that it was error to charge that, if the killing was proved to be the act of the defendant, malice would be presumed from the factum of the homicide. The court reviewed at great length the earlier cases bearing on the subject, and held the charge to be proper. The instruction objected to in the present case does not place the burden on the defendant of introducing *evidence* to show justification or mitigation, but leaves it to the defendant to show justification or mitigation by evidence or by his statement, the language in no way limiting it to evidence. Under the ruling in the *Mann* case, supra, we do not think that the charge complained of in this case was error.

■ Special ground eight contends that it was error to allow the State's witness, Henry Taylor, to testify as to alleged conversations between the witness and Louella Bivins, wife of the defendant, while the witness was in jail after the homicide, as follows: "At that time I was still sticking to the story that I told the coroner, and she told me to never change it, 'Say if you do, don't say anything about that ice pick, do, somebody is going to get a lie bill against you and put you in the chaingang.' She said, 'If you change it,' said, 'They will convict both of you all.' . . One day she come over here . . in the back runway going out the drive . . and she halloed up there to me, . . said, 'Well, don't worry,' said, 'You will be out next week.' . . She said, if I had to have a lawyer, she would hire me a lawyer, and she said they

done paid $400 and two lawyers, and she would send him to represent me."

The objections to this evidence were that no conspiracy had been shown, that Louella Bivins was not on trial, and that it was hearsay evidence.

The State's witness, Henry Taylor, had given testimony on the trial before the jury, making out a case of murder against the defendant. On cross-examination, the defendant's counsel elicited the fact that Taylor had made statements at the coroner's inquest that would make out a case of justifiable homicide.

"Where testimony as to a matter tending to discredit a witness has been introduced in evidence, or drawn from him on cross-examination, it is proper to permit him to explain the matter in order to rebut its discrediting effect." *Gazaway* v. *State,* 15 *Ga. App.* 468 (83 S. E. 857). The witness explained his conduct in testifying falsely, as he contended, at the coroner's inquest by relating that immediately after the homicide the defendant and his wife induced him to conceal the truth of the crime and swear falsely concerning the matter by threatening his life if he told the truth of the homicide. He explained his action in "sticking to" this version of the homicide by relating the conduct of the defendant's wife, as shown by the conversations objected to, in that the wife threatened that he would be indicted for perjury if he changed his testimony. The witness, having admitted that he had committed perjury at the coroner's inquest, was entitled to explain as best he could his reasons for doing so, and the jury could take these facts into consideration in passing on the credibility of the witness. *Hunter* v. *State,* 43 *Ga.* 484 (2); *Gazaway* v. *State,* supra.

It is urged by counsel for the defendant that the evidence should not have been admitted, since the wife, being incompetent to testify, could not contradict it. It is the general policy of our law that the wife is neither competent nor compellable to testify for or against the husband in criminal cases. Code, § 38-1604. We do not think, however, that this rule would prevent a witness from testifying to matters involving the wife of the defendant to explain his adherence to an alleged false version of the homicide, in order to rebut its discrediting effect.

The judgment denying the motion for new trial being otherwise reversed, no ruling is made on the general grounds of the motion.   *Judgment reversed.*   *All the Justices concur.*